MOORE, Chief Justice.
The opinion of December 20, 2013, is withdrawn, and the following is substituted therefor.
*1070 John Meeks' and Oretha Meeks appealed from a partial summary judgment in favor of Roderick Morrow and Merchants & Farmers Bank (“the Bank”). Because it appeared that the judgment from which the Meekses purported to appeal was not a final judgment, this Court’s clerk’s office remanded the cause to the trial court, which then certified its order as final pursuant to Rule 54(b), Ala. R. Civ. P. Having examined the case, this Court now concludes that the trial court’s certification was not proper and that the judgment was not made final. Therefore, we dismiss the appeal.

I. Facts and Procedural History

In 1993, the Freedlander Bankruptcy Trust (“Freedlander”) deeded certain property in Greene County (“the property”) to Henry Lewis, who did not record his deed until January 2006. In 1995, Lewis deeded the property to his grandmother, Bessie Lard, whose deed also was not recorded until January 2006.
In 1998, Mrs. Meeks noticed a house on the property that appeared to be empty. The house was “only a shell” at the time and was “far from being in ‘move in’ condition.” Meekses’ brief, at 15. At that time, the Meekses were unable to obtain the financing they needed to buy the house and renovate it. Consequently, the Meekses and Lard “worked out” an agreement by which the Meekses would take possession of the house and spend the money necessary to complete it, although they had not purchased it. The agreement provided that when the house was complete and the Meekses could obtain financing, they would pay the purchase price of $58,000 and obtain a deed to the property.
In 1999, the Meekses and Lard signed a document styled as a “work-out agreement,” in which the parties agreed to sell the house and the property to Mrs. Meeks on the condition that “this Work-Out Agreement must be ended by January 31, 2006.” The work-out agreement also provided that in the event Lard died before the end of the agreement, Lewis had the right to sign or print her name, apparently for the purpose of finalizing the sale. Lard told Mrs. Meeks to make the payments for the purchase price to Lewis.
Immediately after signing the work-out agreement, the Meekses began working on the property. They bought the supplies they needed to fix the house and did the work themselves. The work necessary to renovate the house included “plumbing, electrical, extension of gas lines, installation of flooring, roof repair, installation of sinks, toilets, and cabinets.” Meekses’ brief, at 17. The Meekses planted grass, trees, and flowers around the house, paved the driveway, and sloped the yard using a bulldozer. Lewis helped with the renovation and was paid by the Meekses in cash. The Meekses contend that, following their work on the house, the property was appraised at $240,000 and later at $250,000.[1] The house was complete enough by October 2004 that the Meekses could officially move in. The Meekses contend that “[sjince early fall of 2004, anyone passing by our home would have been able to see that we lived there.” Meekses’ brief, at 18.
In 2004, the Bank recorded a judgment against Lewis. One of the Bank’s directors, Ralph Liverman, performed a title search. He advised the Bank that Freed-lander held record title to the property.
*1071 In 2006, the Meekses felt that the house was complete and obtained a mortgage to finance their purchase of the house. Lard had died in 2003, so Lewis signed her name to the deed purporting to convey the property from Lard to the Meekses. In 2006, Lewis recorded the deed conveying the property from Freedlander to him, as well as the deed conveying the property from him to Lard. The Meekses thereafter recorded their deed. Thus, all the deeds were recorded by the end of 2006. The Meekses also obtained a title-insurance policy insuring their title as free of any liens.
On December 13, 2006, the Bank initiated proceedings to conduct a sheriffs sale on the property. The Meekses learned of the sale on Friday, January 9, 2009. The sheriff held the sale on Monday, January 12, 2009, after which the sheriff deeded the property to Roderick Morrow as the highest bidder. Morrow’s bid was $48,000.
On January 29, 2009, the Meekses sued Morrow, seeking to redeem the property and a temporary restraining order preserving their possession of the house. On June 2, 2009, Morrow answered and filed a counterclaim, asking the trial court to order the Meekses to vacate the premises, to declare the deed conveying the property from Lard to the Meekses to be a nullity, to declare that the Meekses had no right of redemption, and to award Morrow damages for the Meekses’ refusal to vacate the property and for any damage resulting from the Meekses’ failure to vacate.
On July 10, 2009, the Meekses amended their complaint, adding as defendants the Bank and Lewis,[2] alleging claims of slander of title against the Bank and Morrow and wrongful execution, negligence, “gross negligence,” and wantonness against the Bank. The Meekses also requested, in the alternative, that an equitable lien be placed on the property. Morrow filed a cross-claim against the Bank, alleging misrepresentation and suppression and requesting compensatory damages, punitive damages, prejudgment and postjudgment interest, attorney fees, and costs in the event that the trial court found the Meekses’ title to be superior to Morrow’s.
Morrow moved for a summary judgment in 2009. The Meekses opposed the motion and filed a cross-motion for a summary judgment. The trial court held a hearing on the motions on September 30, 2009, and gave Morrow more time to respond to the Meekses’ cross-motion for a summary judgment. The trial court never ruled on either summary-judgment motion.
The Meekses filed their, second amended complaint on May 4,' 2010, adding a count of breach of fiduciary duty against the Bank. The Meekses filed a third amended complaint on August 19, 2011, requesting a judgment declaring that the Meekses were bona fide purchasers of the property and seeking damages for mental anguish against the Bank and Morrow and requesting, in the alternative, that the sheriffs sale be set aside or that they be granted damages for breach of warranty of title by Lewis. The Meekses filed a fourth amended complaint on August 28, 2012, requesting, in the alternative, that the trial court declare the amount needed to redeem the property and also, in the alternative, if the deed conveying the property to the Meekses was invalid, requesting specific performance from Lewis to convey the property to the Meekses. Morrow and the Bank moved to strike the third and fourth amended complaints. The parties have not briefed this Court on whether the trial court ruled on those motions to strike, but it appears from the trial court’s order of *1072 February 26, 2013 (see infra), that it has not ruled on those motions.
The Meekses moved for a summary judgment again on July 6, 2012, before they filed their fourth amended complaint. On December 6, 2012, the Bank moved for a summary judgment as to the Meekses’ claims against the Bank. Likewise, Morrow moved for a summary judgment as to the Meekses’ claims against him. The trial court held a hearing on those motions on January 28, 2013.
On February 26, 2013, the trial court denied the Meekses’ summary-judgment motion and granted Morrow’s and the Banks’ summary-judgment motions. The trial court found that the unrecorded deed conveying the property from Lewis to Lard was void as to the judgment the Bank recorded against Lewis. The trial court also found that the deed conveying the property from Lard to the Meekses was void on its face and that the work-out agreement had not been properly executed. The trial court concluded:
“Because of these reasons, the Meekses are without title and cannot redeem the property, attack the Sheriffs sale or make their claims in this case against either the Bank or Mr. Morrow. It is FURTHER ORDERED that the Motion for Summary Judgment filed on behalf of Merchants & Farmers Bank is GRANTED.
“The Court further finds that at the request of the Meekses, the Court had entered a temporary restraining order and the same is due to be dissolved. “IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the temporary restraining order is hereby dissolved.
“IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Motion for Summary Judgment filed on behalf of Roderick Morrow is hereby granted and, finally,
“IT IS FURTHER ORDERED that Roderick Morrow is entitled to immediate possession of the property.”
Meekses’ brief, Appendix B (capitalization in original).
The Meekses appealed. On July 22, 2013, this Court’s clerk’s office sent an order to the trial court stating, in relevant part:
“It appearing to the Court that the order appealed from is not a final, appeal-able order in that there remain unadju-dicated claims,
“This cause is remanded to you to determine, within fourteen (14) days from the date of this order, whether to 1) make the order of February 26, 2013, a final judgment pursuant to the provisions of Rule 54(b), Alabama Rules of Civil Procedure; or 2) adjudicate the remaining claims and issue a final judgment as to all claims; or 3) do nothing, in which case this appeal will be dismissed as from a non-final order.”
The trial court replied, in relevant part, as follows:
“The Order granting partial summary judgment in this case disposed of all the claims of the plaintiffs against the defendant, Roderick Morrow, and against the defendant, Merchants & Farmers Bank, and has left pending the Counterclaim of Roderick Morrow against the plaintiffs and the Crossclaims of Roderick Morrow against Merchants & Farmers Bank and the mortgage company.[3] Further *1073 more, there may be remaining a claim by the plaintiffs against the estate of Henry Lewis and/or the Estate of Bessie Lard based upon the allegations in some of the Amended Complaints (the Court does not, at this point, decide whether the plaintiffs can amend to add those estates or not).
“The Court finds that there is no prejudice or risk of inconsistent results in granting a partial final judgment on the Order granting partial summary judgment and this is true especially considering the posture of the case and the fact that the plaintiffs have requested appellate review of the summary judgment order. In fact, the Court believes that making the partial summary judgment order a final judgment will expedite the remaining issues in this case.
“Accordingly, the Court directs the entry of final judgment on all claims of the plaintiffs against the defendant, Roderick Morrow, and against the defendant, Merchants & Farmers Bank, as set forth in the Order granting summary judgment. The Court further finds that there is no just reason for delay and makes this express direction for the entry of said partial final judgment.”
The parties subsequently filed motions stating that they believed the trial court properly certified its February 26, 2013, order as a final judgment under Rule 54(b), Ala. R. Civ. P.

II. Analysis

Although the parties do not dispute the validity of the trial court’s Rule 54(b) certification, this Court takes note of jurisdictional matters ex mero motu. Nunn v. Baker, 518 So.2d 711, 712 (Ala.1987). An appeal will be dismissed ex mero motu if the order appealed is not a final judgment. Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 362 (Ala.2004).
Rule 54(b), Ala. R. Civ. P., provides:
“When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.”
In Schlarb v. Lee, 955 So.2d 418, 419-20 (Ala.2006), this Court stated the following concerning certifications under Rule 54(b):
“This Court looks with some disfavor upon certifications under Rule 54(b).
“ ‘It bears repeating, here, that “ ‘certifications under Rule 54(b) should be entered only in exceptional cases and should not be entered routinely.’ ” State v. Lawhorn, 830 So.2d 720, 725 (Ala.2002) (quoting Baker v. Bennett, 644 So.2d 901, 903 (Ala.1994), citing in turn Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373 (Ala.1987)). “ ‘ “Appellate review in a piecemeal fashion is not favored.” ’ ” Goldome Credit Corp. v. Player, 869 So.2d 1146, 1148 (Ala.Civ.App.2003) (quoting Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So.2d 190, 192 (Ala.Civ.App.1999), quoting in turn Brown v. Whitaker Contracting Corp., 681 So.2d 226, 229 (Ala.Civ.App.1996)) (emphasis added).’ *1074 “Dzwonkowski v. Sonitrol of Mobile, Inc., 892 So.2d 354, 363 (Ala.2004). Also, a Rule 54(b) certification should not be entered if the issues in the claim being certified and a claim that will remain pending in the trial court ‘ “are so closely intertwined that separate adjudication would pose an unreasonable risk of inconsistent results.” ’ Clarke-Mobile Counties Gas Dist. v. Prior Energy Corp., 834 So.2d 88, 95 (Ala.2002) (quoting Branch v. SouthTrust Bank of Dothan, N.A., 514 So.2d 1373, 1374 (Ala.1987)).”
In determining whether the trial court exceeded its discretion in determining in a Rule 54(b) certification that there was no just reason for delay, the following five factors, or those of them that are applicable, should be considered:
“ ‘ “(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the [trial] court; (3) the possibility that the reviewing court might be 'obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.” ’ ”
Lighting Fair, Inc. v. Rosenberg, 63 So.3d 1256, 1264 (Ala.2010) (quoting MCI Constructors, LLC v. City of Greensboro, 610 F.3d 849, 855 (4th Cir.2010)) (emphasis and footnote omitted).
The most critical factor in this case is the relationship between the adjudicated claims and the unadjudicated claims. The trial court’s February 26, 2013, order decided the Meekses’ claims against Morrow and the Bank, but left several claims pending: Morrow’s counterclaim against the Meekses, and Morrow’s cross-claims against the Bank and Option One Mortgage Corporation (see supra note 3). All of those claims; with the possible exception of the claim against Option One, are completely dependent upon our affirmance or reversal of the trial court’s February 26, 2013, order. Morrow’s request for damages is dependent upon this Court’s affir-mance of the February 26, 2013, order. Likewise, Morrow’s cross-claim against the Bank seeking damages for fraud and suppression is dependent upon this Court’s reversing the trial court’s order. In this case, therefore, “ ‘the parties’ ... claims are dependent on each other and a resolution of one claim would impact the determination of the other.’ ” Gregory v. Ferguson, 10 So.3d 596, 598 (Ala.Civ.App.2008) (quoting BB & S Gen. Contractors, Inc. v. Thornton & Assocs., Inc., 979 So.2d 121, 125 (Ala.Civ.App.2007)). Thus, the claims remaining before the trial court and the claims before us on appeal are so intertwined that they cannot be adjudicated without the “unreasonable risk of inconsistent results.” Schlarb, 955 So.2d at 419-20.

III. Conclusion

We hold that the trial court exceeded its discretion in certifying its order of February 26, 2013, as a final judgment pursuant to Rule 54(b). “ ‘ “When it is determined that an order appealed from is not a final judgment, it is the duty of the Court to dismiss the appeal ex mero motu.” ’ ” Dzwonkowski, 892 So.2d at 362 (quoting Tatum v. Freeman, 858 So.2d 979, 980 (Ala.Civ.App.2003), quoting in turn Powell v. Republic Nat’l Life Ins. Co., 293 Ala. 101, 102, 300 So.2d 359, 360 (1974)). Consequently, the appeal is dismissed as being from a nonfinal judgment.
*1075 APPLICATION OVERRULED; OPINION OF DECEMBER 20, 2013, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED.
BOLIN, MURDOCK, MAIN, and BRYAN, JJ., concur.

. The value of the property is contested by the parties. The Meekses argue that the Bank conceded that the renovated property has a "replacement cost of over $600,000," Meeks-es’ brief, at 25, whereas the Bank argues that the Meekses’ total investment was "around $78,000 — or more, but less than $158,000.00.” Bank's brief, at 21-22.

. Apparently Lewis died at some point during this litigation.

. The mortgage company to which the order refers appears to be Option One Mortgage Corporation ("Option One”). The Meekses contend that "Morrow filed a motion to add Option One ... as [a] necessary party defendant]” but that "such motion was not ruled *1073 on.” Meekses’ brief, at vii. The Meekses also claim that "Morrow later filed a pleading indicating he no longer intended to add Option One as a patty defendant.” Meekses’ brief, at vii-viii. These motions do not appear in the record. Meekses’ brief, at vii-viii. However, the Meekses state that "Option One is not a proper party to this appeal and is omitted as an appellant.” Meekses’ brief, at viii.